# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **KIMBERLY DICKERSON** | **CIVIL ACTION NO. 6:11-cv-1628** |
| **VS.** | **SECTION P** |
| | **JUDGE DOHERTY** |
| **ROB REARDON, ET AL.** | **MAGISTRATE JUDGE HANNA** |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Kimberly Dickerson, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on September 7, 2011. When she filed her complaint, plaintiff was incarcerated at the Lafayette Parish Corrections Center (LPCC). She complained about the fact and conditions of her confinement and prayed for "relief which she is entitled..." [Doc. 1, p. 6], "justice for the abuse and harm to me and child" [Doc. 4, p. 4], "equal protection..." and "equal justice for my pains and suffering from brutality by the workers and suffering in terrible conditions of the jail..." [Doc. 8, p. 4] She was released from custody in May 2012 and now resides in South Carolina.

In her original complaint she sued LPCC, its Director, Rob Reardon, the LPCC Medical Department and its director, Manuel Gonzales, Lafayette City-Parish President Joey Durel, City-Parish "officials," Lance Carrugh, Butch Browning, Jr., Bo Carter, and Mr. Peacock, the State of Louisiana, the Fifteenth Judicial District Court and Judge Marilyn Castle. [Doc. 1, p. 1; Doc. 8, p. 3]

In her amended complaint filed on January 9, 2012 she added or identified the following defendants, Case Managers Alicia Barbie, Wayne Hebert and Dr. Cook as well as "Directors"

Pam and Bridgett; Sgts. Yashar, Celestine, and McKinley, and, Nurse Diane. [Doc. 12] She has previsously requested and been denied court-appointed counsel. [Docs. 15 and 16] In her final amended complaint she identified the following defendants – Alicia Barbie, Wayne Hebert, Dr. Cook, Pam and Bridgett, Warden Bob Reardon, Sgt. Celestine, Sgt. McKinley, Judge Castle, and, Manuel Gonzales and again asked for appointment of counsel. [Doc. 22]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint and amended complaints be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

### Background

*1. Original Complaint [Doc. 1]*

Plaintiff's original hand-written pleading provided a litany of complaints, namely – (1) her improper removal from STOP[1]; (2) unsanitary conditions of confinement at the LPCC (she claimed the facility was infested with cockroaches, centipedes, and rats); (3) unlawful confinement to lock-down; (4) physical and verbal abuse by prison guards; (5) unlawful injection of unknown substances which resulted in the premature birth of her child and the placement of that child in intensive care; (6) "issues" with other female inmates and prison guards; (7) that she was deprived of her right to counsel, her right to seek treatment from a physician of her own

---

[1] STOP –"Sheriff's Tracking Offender Program" – is a program administered by the Lafayette Parish Sheriff; it is designed to allow for early release of both sentenced and unsentenced offenders and placement in the appropriate program most suited to the rehabilitation needs of the offender. See www.lafayettesheriff.com

choice, and her right to be heard before the Court concerning her unlawful custody; and (8) that physicians and nurses on the LPCC staff produced false reports accusing plaintiff of attempting to harm herself or her unborn child.

## 2. First Amended Complaint [Doc. 4]

In her amended complaint filed on October 24, 2011, plaintiff complained that she was terminated from STOP "for quitting my job after 19 [months] and was 6 [months] pregnant and having complications." She complained that she was placed back in jail and given pain medication which resulted in the early birth of her child and her child's treatment in intensive care for 8 days. She also alleged that she was abused on several occasions by the LPCC staff.

## 3. Second Amended Complaint [Doc. 8]

On October 31, 2011 plaintiff filed a second amended complaint. She alleged that during some unspecified period of time she lodged numerous complaints concerning the abuse and neglect she suffered while incarcerated at LPCC. She complained that the numerous grievances about conditions of confinement made to defendants Reardon, Gonzales, Durel and Judge Castle were unanswered.

## 4. Amend Order and Third Amended Complaint [Docs. 11 and 12]

On December 16, 2011 plaintiff was directed to amend her complaint to provide factual support for her conclusory claims. She was ordered to identify each person who violated her rights, to describe what each defendant did to violate her rights, to state the date and place of each violation, and, to describe the injury she sustained as a result of each violation. [Doc. 11]

On January 9, 2012 she submitted an amended complaint. She implied that her termination from the "STOP" program was the fault of Alicia Barbie, Wayne Hebert, Dr. Cook,

3

and Directors Pam and Bridgett. She alleged that on June 9, 2011 she met with Hebert and Cook "... concerning situation with employment status and concernment [sic] of classes of improvement." She claimed that neither Hebert nor Cook "had no objectives of my decision." She then alleged that on June 13, following a meeting with these defendants her placement in STOP "... was terminated and [she was] placed back in jail." She claimed that at this time she was 6-7 months into her pregnancy and her termination from STOP and her re-incarceration violated her "civil rights and liberties" because she "... had every right to quit job due to employment position and risks of pregnancy." She concluded by claiming that the "program failed [her]."

She alleged that from June 13, 2011 to the present she was exposed to "unsanitary conditions of confinement... no air in the summer/no heat in winter as well as infested with cockroaches, ants, rats, etc...."

She also alleged that she was unlawfully confined in lock-down on "several occasions" by Sgt. Yashar and that in lock-down she was deprived of her mattress for 16 hours/day.

She alleged that she was physically and verbally abused by Sgts. Celestine and McKinley and confined to a "restraint chair for a min of 4 to 6 hours on several occasions."

She alleged that she received "unlawful injections" of Haldol, Zoloft, Paxil and anti-inflammatory drugs for pain from Medical Director Gonzales, Nurse Diane and other unnamed members of the LPCC Medical Staff. She claimed that this violation occurred "about the week before and present to July 26, 2011..." and resulted in the birth of her child by C-section and the placement of her baby in "... intensive care for 8 days due to complications of birth/medications."

She concluded by claiming that she was "deprived of rights due to physician of choice[,]

4

right to be heard through several request unanswered [and,] not having been taken to court since arrival of confinement..." For these violations she faulted Reardon and Judge Marilyn Castle. Finally, she alleged that she was "placed under investigation by Department of OCS on 7-26-11 for child abuse and neglect due to medical conditions of child birth and medication that was given as a result. After 15 days allegations were invalid and [she] was at no fault of abuse."

*5. Additional Amendments and Motions*

On March 29, 2012 plaintiff wrote a letter to the court asking for a stay until sometime after May 14, 2012, the projected date of her release from custody. [Doc. 13] Her motion was granted on April 2, 2012 and she was provided additional time to cure the deficiencies noted in the original memorandum order. [Doc. 14] On June 19, 2012 she requested appointment of counsel and another extension to respond to the prior order to amend. [Doc. 15] The undersigned denied the motion for appointment of counsel but granted an extension of time within which to respond to the amend order. [Doc. 16]

On July 30, 2012 plaintiff advised the court of her new address in Bluffton, South Carolina. [Doc. 17] On August 24, 2012 she filed another request for an extension within which to amend her complaint. [Doc. 18] To this request, she attached certain medical records from the University Medical Center, Lafayette and Louisiana Office of Community Services. [Doc. 18-1] On August 27, 2012 plaintiff's request for an extension was granted and she was given until September 21, 2012 to file her amendments. [Docket Sheet Entry 19] Mail sent to her from the Clerk was returned as undeliverable on September 4 and 7, 2012. [Docs. 20-21]

On September 24, 2012 she filed another amended complaint. [Doc. 22]

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

Nevertheless, in order to be afforded the benefits of this assumption a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *see also Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is

"not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff filed an original complaint and amended complaints. She was instructed to amend her complaints to provide more specific facts in support of each of her claims against each of her defendants and, she has been given ample time to respond to that order. She has filed pleadings in response to the amend order and it appears that she has pleaded the broad contours of her case. She need not be afforded the opportunity for further amendment.

### *2. Improper Removal from STOP*

Plaintiff complains that she was unlawfully terminated from the STOP Program. According to plaintiff, this occurred on June 9, 2011 when she was 6-7 months into her pregnancy, and she quit her job, and, as a result her participation in the STOP program was terminated by defendants Barbie, Hebert, Cook, Pam and Bridget.

From the facts thus far alleged, it appears that plaintiff has been convicted of some offense, that she was placed on probation, and, that at some point in time her probation was revoked for unspecified violations. It further appears that she was permitted to remain free so long as she abided by the conditions of the STOP program, one of which mandated that she maintain employment.

Plaintiff implies that her removal from the STOP program violated the due process guarantees of the Fourteenth Amendment. However, in order to state a due process claim, plaintiff must show that she was deprived of either a liberty interest or a property interest. Here, plaintiff fails to state a claim because she has neither a liberty nor property interest in her participation in the STOP program.

The STOP program administered by the Lafayette Parish Sheriff's Department appears to be a work release program which allows pre-trial detainees and convicts alike to remain free from incarceration provided they maintain employment and otherwise behave themselves. In *Welch v. Thompson*, 20 F.3d 636 (5th Cir. 1994), the Fifth Circuit determined that La. R.S.15:1111, the statute which authorizes the Louisiana Department of Correction's (LDOC's) work-release program – entrusts the actual operation of the work release program to the LDOC. The court further determined that the statute does not dictate to the LDOC who it must put on work release. In short, the Fifth Circuit has held that "...La. R.S.15:1111 <u>does not create a liberty interest</u> subject to the Due Process Clause." *Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir. 1994). The statute is virtually identical to La. R.S.15:711 which authorizes Parish Sheriffs to establish work-release programs. Indeed, the latter statute also provides, "<u>Each sheriff</u> shall establish written rules for the administration of the work release program and <u>shall determine those inmates who may participate in the release program</u>..." Since the statutes are virtually identical in substance, it is safe to conclude that R.S.15:711, like its LDOC counterpart, R.S.15:1111, also does not create a liberty interest subject to the Due Process Clause. The STOP program seems remarkably similar. It appears that the sheriff established the program and has promulgated the rules and regulations governing the program. The Sheriff, through his various

departments, determines who is and who is not eligible to participate in the program. Since the statute does not create a protected liberty interest for eligible prisoners, there can be no deprivation of a liberty interest protected by the due process clause of the Constitution, and therefore plaintiff cannot show that her rights to due process have been violated.

To the extent that plaintiff also implies that she was deprived of a "property interest" as opposed to a liberty interest in violation of the due process clause, such an argument also lacks an arguable basis in law and fact. In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court concluded that in order to have a property interest in a benefit, a person must have more than a "unilateral expectation" of it. Rather, he must "have a legitimate claim of <u>entitlement</u> to it." *Id.* (emphasis supplied). Thus, the "property interest" protected by the due process clause of the Fourteenth Amendment is defined by the concept of "entitlement," which in turn describes "the security of interests that a person has already acquired in specific benefits." *Id.* at 576, 92 S.Ct. at 2708. In other words, a person's interest in a benefit is a property interest only "if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit..." *Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988). Plaintiff can point to no rule or understanding which entitles her to participate in the STOP program. Indeed, the Fifth Circuit has previously held that prisoners have no property interest in work-release employment. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.1995).

Plaintiff is not constitutionally entitled to participate in the STOP program and therefore to the extent that she implies that she was denied either a liberty interest or a property right in violation of the Due Process Clause, such claims are subject to dismissal. Further, even if

plaintiff had a Constitutionally guaranteed right to participate in the program, she has not shown that participation was denied without due process.

### 3. Unsanitary Conditions of Confinement

Plaintiff also claimed that she was exposed to unsanitary conditions of confinement; that the facility is infested with insects and rats and that the heating and cooling systems are inadequate. Complaints about prison conditions are analyzed under the Eighth Amendment which proscribes cruel and unusual punishment. While the Eighth Amendment does not prohibit punishment it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Additionally, while the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999).

Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. *Harper,* 174 F.3d at 719. First, there is an objective requirement that the plaintiff demonstrate conditions "<u>so serious as to deprive prisoners of the minimal measure of life's necessities</u>," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, under a subjective standard, it must be shown that the responsible prison officials acted with <u>deliberate indifference to the prisoner's conditions of confinement</u>. *Woods*, 51 F.3d at 581. "The second requirement follows from the principle that only the <u>unnecessary and wanton infliction of pain</u> implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Plaintiff's complaint simply does not rise to the level of Eighth Amendment violations.

She was instructed to amend her original complaints to provide a description of the harm or injury she sustained as a result of her exposure to the allegedly unlawful conditions she described, however, she alleged no specific harm resulting from that exposure. To rise to the level of a constitutional violation, the conditions must be " 'so serious as to deprive [plaintiff] of the minimal measure of life's necessities... '"*Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir.2003) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995)). Thus, in order to prevail on such a claim, the plaintiff must demonstrate not only that she was exposed to a substantial risk of serious harm, but that she actually suffered some harm that was more than *de minimis*. See *Siglar v. Hightower*, 112 F.3 191, 193-94 (5th Cir.1997); *Alexander v. Tippah County, Miss*, 351 F.3d at 630-31; *Luong v. Halt*, 979 F.Supp. 481, 486 (N.D.Tex.1997). Plaintiff has alleged no more than discomfort and inconvenience and with respect to her conditions of confinement claim, that alone is insufficient to state a claim for which relief may be granted.

*4. Unlawful Confinement to Lock-Down*

11

Plaintiff also complained that on "several occasions" she was wrongly confined in lockdown by Sgt. Yashar. This allegation, taken as true for the purposes of this Report, fails to state a claim for which relief might be granted pursuant to 42 U.S.C. § 1983 because "[t]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The federal jurisprudence holds, that while the states may under certain circumstances create rights that implicate Due Process, such rights are limited to freedom from restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Thus, relying on *Sandin*, the Fifth Circuit has found that "'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995)) (rejecting claim that confinement in administrative segregation violated prisoner's due process rights). The Fifth Circuit has also rejected a state prisoner's claim that the additional restrictions imposed on those in administrative segregation violated his due process rights. *See Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (*per curiam*)(absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest.).

In other words, when a prisoner is lawfully incarcerated, he loses by virtue of his confinement, many of the rights and privileges that most citizens enjoy. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). Thus, "... mere[ ] changes in the conditions of [ ] confinement ... do

not implicate due process concerns." *See Madison*, 104 F.3d at 768; *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.1999) ("Inmates have no protectable property or liberty interest in custodial classifications."). Plaintiff's confinement in lock down did not amount to an"atypical" hardship and therefore, insofar as she complains about that confinement, her claim is frivolous.

### 5. *Physical and Verbal Abuse by Guards*

Plaintiff also alleged that she was physically and verbally abused by Sgts. Celestine and McKinley. With regard to the claim of verbal abuse, such action, without more, does not support a constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.1983). Plaintiff's claim – to the extent that she complains about verbal abuse – is therefore frivolous.

With regard to the claimed physical abuse, plaintiff claimed only that she was confined to a restraint chair for four to six hours on several occasions. This claim is also analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. Of course, the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The determinative question with regard to an excessive force claim is "... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. In making the determination, courts should consider the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered. *Id.* With regard to these factors, courts should be mindful "that prison officials 'may have had to act

quickly and decisively.'" *Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir.1998) (citation omitted). Moreover, "[t]he amount of force that is constitutionally permissible ... must be judged by the context in which that force is deployed." *Id.* (citation omitted).

While the malicious and sadistic use of force to cause harm violates contemporary standards of decency, not every malevolent touch, push, or shove by a prison guard gives rise to a federal cause of action. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). A use of force which is not "repugnant to the conscience of mankind," *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986), is excluded from the Eighth Amendment's prohibition of cruel and unusual punishment and is considered to be *de minimis*.

Plaintiff was directed to provide more detail in support of her excessive force claim. She only added that she was confined to a "restraint chair" on several occasions.  She did not describe the conditions under which she was restrained, nor did she allege the reasons for the restraint. Furthermore, she was specifically directed to describe the injuries sustained as a result of the alleged violation. However, she alleged no harm resulting from the alleged use of force.  The lack of any allegations to the contrary leads the undersigned to conclude that the force used was not excessive,  malicious, or sadistic and thus not actionable under Section 1983.

### 6. *Unlawful Injections Caused Premature Birth of Plaintiff's Child*

Plaintiff alleged that sometime in July 2011 defendants Gonzales, Nurse Diane, and others injected her with Haldol, Zoloft, Paxil, and some unspecified anti-inflammatory drugs for pain; she claimed that these "unlawful injections" resulted in the premature birth of her child and the child's placement in intensive care for a period of "... 8 days due to complications of birth/medications."

14

The constitutional right of a convicted prisoner to appropriate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation a plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to her serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials intentionally treated her incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the defendants identified in her pleadings. Plaintiff asserts that the injections complained of were "unlawful" but provides nothing other than this conclusive statement to suggest that the defendants <u>intentionally</u> treated her incorrectly. Indeed, it appears that she disagreed with the treatment regimen advanced by the defendants and, disagreement with medical treatment does not establish deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

Further, plaintiff has alleged only conclusively and without further proof, that the

complained of medical treatment was the sole cause of the premature birth of her child and of her child's subsequent treatment in ICU following birth. In so doing plaintiff has failed to allege injury resulting from the actions of the defendants.

In short, plaintiff has failed to plead facts sufficient to allege that the defendants' treatment amounted to deliberate indifference and therefore, with regard to this claim she has again failed to state a claim for which relief may be granted.

### 7. Miscellaneous Claims

In her original complaint, plaintiff also alleged that she had "issues" with other female inmates and prison guards; however, she did not elaborate on this claim in her amended complaints. This allegation, standing alone, does not state a claim for which relief may be granted.

In her original complaint plaintiff alleged that she was denied her right to counsel, however, she did not elaborate on this claim in her amended complaints. It is unclear whether plaintiff maintains that she was denied the right to counsel in a criminal prosecution, or, as appears more likely, that she was not represented by counsel in a child custody matter. It does appear however, that she was ultimately vindicated with regard to the child custody matter and therefore can establish no injury or harm arising out of the failure to provide counsel with regard to her child custody claim. Further, she alleged that she was denied the right to be heard with respect to the child custody claim but also failed to provide factual support for this allegation. In any event, as shown above, plaintiff was apparently incarcerated when her child was born and therefore it was unlikely that she would be allowed to retain custody under those circumstances.

Plaintiff also claimed that she was denied the right to seek treatment from the physician

of her choice. She failed to elaborate on this claim when given the opportunity to do so. In any event, plaintiff has no constitutional right to choose a physician while she is incarcerated.

Plaintiff also complained that physicians and nurses at LPCC produced false reports alleging that plaintiff was a danger to herself and her new born child. She claims that she was thereafter placed under investigation for abuse and neglect by the Office of Community Services. Once again, however, plaintiff has not supported these conclusive allegations with facts; and, even if true, her claims merely demonstrate a disagreement with diagnosis and treatment by health care professionals and as such fails to state a claim for which relief may be granted. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

Plaintiff claimed that she was denied copies of her medical records; this claim does not implicate a violation of the Constitution and therefore fails to state a claim for which relief may be granted.

Finally, plaintiff has always only requested "relief which she is entitled..." [Doc. 1, p. 6], "justice for the abuse and harm to me and child" [Doc. 4, p. 4], "equal protection..." and "equal justice for my pains and suffering from brutality by the workers and suffering in terrible conditions of the jail..." [Doc. 8, p. 4] Even if she were to prevail in this matter, it is not at all clear whether the remedies she seeks could be ordered.

### *Conclusion, Order, and Recommendation*

As noted above, plaintiff has again apparently requested appointment of counsel. [Doc. 22] For the reasons set forth in the Memorandum Order denying her first request for appointment of counsel [Doc. 16], her second motion for appointment of counsel must be and is **DENIED;**

and,

**IT IS RECOMMENDED** that plaintiff's civil rights complaints be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Lafayette, Louisiana October 3, 2012.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE